## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELER SADATI<br>5410 Woodview Way<br>Malvern, PA 19355 | : <br>:<br>:<br>:<br>: | |
|       Plaintiff, | :<br>: | |
| v. | :<br>:<br>: | No. _____ |
| PRIMECARE MEDICAL, INC.<br>3940 Locust Lane<br>Harrisburg, PA 17109<br>    and<br>TODD HASKINS<br>3940 Locust Lane<br>Harrisburg, PA 17109<br>    and<br>THOMAS WEBER<br>3940 Locust Lane<br>Harrisburg, PA 17109<br>    and<br>KURT EHRENFEUCHTER<br>3940 Locust Lane<br>Harrisburg, PA 17109 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
|       Defendants. | :<br>: | |

### CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.       This action has been initiated by Sheler Sadati (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Primecare Medical, Inc, Todd Haskins, Thomas Weber, and Kurt Ehrenfeuchter (*hereinafter* collectively referred to as "Defendants," unless indicated otherwise) for violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), 42 U.S.C. §§ 1983, and applicable state law(s). The crux of Plaintiff's allegations in this lawsuit are premised upon her wrongful termination *for objecting to workplace illegalities.*

As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Any state claims pursued herein or included would be proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants herein as well.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult female residing at the above-captioned address.

7.      Defendant Primecare Medical, Inc. (hereinafter "Defendant Primecare" where referred to individually) is a corporation engaging in the business of providing subcontracted healthcare services to correctional facilities.

8.    Defendant Todd Haskins (hereinafter "Defendant Haskins" where referred to individually) is the Chief Operating Officer ("COO") of Defendant Primecare.

9.    Defendant Thomas Weber (hereinafter "Defendant Weber" where referred to individually) is the Chief Executive Officer ("CEO") of Defendant Primecare.

10.    Defendant Kurt Ehrenfeuchter (hereinafter "Defendant Ehrenfeuchter" where referred to individually) is a Director overseeing aspects of human resources and recruitment for Defendant Primecare.

11.    At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.    Plaintiff race, ethnic characteristics, and ancestry are properly characterized in the following ways:

(a) She is Iranian and Persian;

(b) She is Middle Eastern; and

(c) She speaks with a distinct and noticeable accent (albeit fluent in English).

14.    Plaintiff is a medical doctor with more than a decade of experience in providing emergency medical care, overseeing occupational medical care, and other forms of medical oversight. Plaintiff has and continues to maintain a strong reputation for her demonstrated performance and work history.

15.    Defendant Primecare provides correctional healthcare to county jails, prisons, and juvenile detention centers. Its employees perform *functionally* as municipal employees working full-time in correctional facilities attending to inmates, although they are subcontracted as a private (for-profit) corporation. And Defendant Primecare as a whole provides a quasi-municipal role as a corporation.

16.    Some claims in the instant lawsuit are premised, in part, upon Defendant Primecare (and its corporate hierarchy) performing the functions of a municipality, thus ***making it properly liable as a "state actor"*** for any civil rights or constitutional violations (applicable to such state actors).[1]

17.    On or about October 17, 2019, Plaintiff was offered employment by Defendant Primecare "for the position of Full-Time Medical Director" in "the medical department at the Montgomery County Correctional Facility."

18.    Plaintiff accepted employment with Defendant Primecare, and she physically commenced working on or about Wednesday, October 23, 2019.

19.    In total, Plaintiff was physically employed by Defendant Primecare for approximately 9 days, until her termination from employment which was effective Thursday, October 31, 2019.

---

[1] Defendant Primecare **would have no good-faith arguments** that its employees are not protected under 42 U.S.C. § 1983, as it has been repeatedly held by Courts in the United States to be a "state actor." *See e.g. Kinder v. PrimeCare Med., Inc.*, 2014 U.S. Dist. LEXIS 182965 (S.D. W.Va. 2014)(because of its role performing correctional facility medical care, Primecare acts under color of state law subject to § 1983 liability); traditionally and exclusively public function renders otherwise private actors "persons acting under the color of state law; " *Ponzini v. Monroe Cnty.*, 2015 U.S. Dist. LEXIS 115669 (M.D. Pa. 2015)(Performing a correctional facility role, "which is traditionally and exclusively [a] public function renders otherwise private actors "persons acting under the color of state law" making Primecare liable under §1983.); *Farrington v. Cty. of Bucks*, 2018 U.S. Dist. LEXIS 82891 (E.D. Pa. 2018)(Primecare does not dispute qualifying as a state actor for purposes of §1983 application).

**[A] Plaintiff's termination was retaliatory, and she was terminated for opposing, voicing, and/or objecting to illegalities in the workplace.**

20.    Plaintiff was terminated for 3 separate reasons (as follows), all of which were retaliatory, which individually or in their aggregate, constitute statutorily prohibited termination from employment.

**[1] Plaintiff reported racial, ancestral, and/or ethnic discrimination concerns.**

21.    Plaintiff speaks with a discernable accent which is a linguistic characteristic of her race, ethnicity and/or ancestry.

22.    Joseph Lynch ("Lynch") is a Health Services Administrator (commonly referred to as HSA) at the Montgomery County Correctional Facility at 60 Eagleville Road, Eagleville, PA 19403 (hereinafter "MCCF").

23.    Lynch performs a coordination role with medical care; and Plaintiff – as part of her job position – was required to interact with Lynch a continual basis. His job, actions, and directives directly would have impacted Plaintiff's work environment and terms and conditions of employment.

24.    In the short timeframe Plaintiff was employed with Defendant Primecare, Lynch questioned Plaintiff's ability to perform her job with her accent expressing concerns of how she will be received by staff and prisoners (inferring Plaintiff would face difficulties for appearing as a foreigner). Lynch had also questioned whether Plaintiff (a very reputable medical doctor *with a strong command of the English language*) had to translate English in her head before speaking it because that's how it appeared. Both views espoused by Lynch were objectively discriminatory, and he expressed the concerns as if a perception of the facilities as a whole.

5

25.     Plaintiff's actual management hierarchy consisted of her directly reporting to Defendant Haskins (as the COO), indirectly reporting to Defendant Weber (as the CEO), and having to take directives or register concerns with Defendant Ehrenfeuchter (as a Director of Recruitment and Human Resources matters). Defendants Haskins, Weber, and Ehrenfeuchter are hereinafter collectively referred to as "Primecare Management."

26.     As a result of what Plaintiff believed to be a discriminatory perception of her by the Health Care Administrator of MCCF, Plaintiff verbally expressed concerns of same and what she had been told to Primecare Management. Plaintiff did so because it was important for Defendant Management to be aware of the discriminatory perception in the event any matter escalated or she was thereafter treated in a biased / discriminatory manner. And of course, Plaintiff was hopeful Primecare Management would educate those around Plaintiff about non-discrimination best practices.

### [2] Plaintiff reported unwelcome sexually-offensive conduct.

27.     On October 29, 2019, an administrative employee introduced himself to Plaintiff and made numerous offensive sexual and/or gender-related comments.

28.     The administrative employee in particular had referenced his penis, said women have a bad sense of judgment with distance, and continued discussing penis size.

29.     While it is certainly feasible the particular employee may have been attempting to make jokes, Plaintiff was highly offended, and it was clearly unwelcome discriminatory commentary about gender, in addition to being unwelcome and a form of prohibited sexual harassment.

30.     Plaintiff informed Primecare Management that she was offended, found it to be sexually inappropriate, and that although she walked away from the situation, she was going to

demand escalation if such conduct did not cease. Plaintiff further suggested to Primecare Management that it ensure proper training on a going-forward basis.

31.     Plaintiff was terminated within 2 days of registering the concerns of this incident with Primecare Management.

### [3] Plaintiff objected to unconstitutional and unlawful medical practices and policies.

32.     Defendant Primecare rather astonishingly portrays itself as a sophisticated nationwide operation, employing well in excess of 500 employees nationally (predominantly within prison settings). But it is run from the above-captioned address where management treats the business almost as if a mom-and-pop small business, not caring about impropriety, policy violations, and the making of impulsive management decisions irrespective of legality.

33.     Following offer of employment, acceptance, and physical commencement of work, Plaintiff was deemed employed by Defendant Primecare for roughly 9 days. In this 9 days, Plaintiff informed Primecare Management of specific improprieties, *which **Plaintiff believed** to be **unlawful and/or unconstitutional** with respect to inmate care*.

34.     Plaintiff is not faint of heart, nor is she so ultra-sensitive that she believes every gripe, concern or complaint of an inmate warrants immediate medical attention. However, Plaintiff witnessed a pattern, practice and level of medical care in MCCF that shocked her, scared her to her very core, and was such a deviation from any reasonable level of medical care, it led her to raise significant internal concerns as follows:

> (1) When inmates complained of a significant ailment or something could be potentially serious, or warranting of a prompt review, exam or diagnostics, medical staff (including physician's assistants) assistants often joked about or ignored the situations. Plaintiff learned that serious health concerns of inmates would not be even reviewed for sometimes weeks but **up to several months**. Plaintiff will provide specific examples but refrains from doing so herein per privacy restrictions.

(2) Patients do not shed their state and federally-protected rights to confidentiality of their health information through HIPPA or otherwise purely by virtue of being incarcerated. Defendant Primecare's Medical Staff treats multiple prisoners in the same vicinities, rooms and facilities, discussing openly their health histories, medical concerns, and other confidential medical information. Defendant Primecare blanketly violates medical privacy rights of inmates with information that could be harmful, humiliating, or detrimental to the safety of inmates.

(3) Medical staff of Defendant Primecare did not make efforts to comply with required infection controls, running the risk of contagion and prison outbreak. Defendant Primecare's medical staff would literally treat inmates in the exact same sitting or bedding area where they had bled, left other bodily fluid, or where pus had been discharged. This is medically very dangerous to patients, caused the risk of infection or disease contraction by other inmates and/or a prison outbreak of other infectious diseases.

(4) One physician's assistant let a facial infection of a prisoner where it was known he could potentially lose his eye(s) due to said infection continue without certain medication and without informing the prior Medical Director because – as she explained – "she does not like him." Much of Defendant Primecare's Medical Staff lacked adequate experience, training, or medical knowledge to treat particular inmates but were permitted to do so without proper supervision or direction. There are many such examples, but Plaintiff refrains from providing same herein per privacy restrictions.

(5) Defendant Primecare's Medical Staff, consisting of Physicians Assistants and other non-medical doctor staff (who report to the Medical Director) were legally required to discuss cases with their supervisory physician (the Medical Director) and types of anticipated clinical care. Defendant Primecare's Medical Staff though provided clinical care though without consult, supervision, or other abidance of legal requirements for proper supervision by a medical doctor. On other occasions, Defendant Haskins (only with a nursing degree) would direct the Medical Director (an actual medical doctor) on a contrary form of medical care as directed by the doctor. This was not permitted by Defendant Haskins' licensure (as unauthorized practice of medicine), and it placed inmates in danger.

(6) Defendant Primecare Medical Staff wasted medication, caused unnecessary trips to medical facilities, hospitals, failed to verify needs of certain inmates resulting in unnecessary medical expenditures, and referred inmates unnecessarily to specialists at times. Due to Defendant Primecare's poor oversight, negligent hiring and retention of medical staff, and other systemic failures, Defendant Primecare wasted state monies in substantial ways.

35.    As stated *infra*, Plaintiff is not a neophyte to the practice of medicine. And she does not believe every cramp, muscle ache or pain warrants some prompt level of care or immediate x-ray. But in the approximate 9 days Plaintiff was employed by Defendant Primecare as a Medical Director, she observed objectively unlawful and unconstitutional policies and practices related to the administration (or lack thereof) of medical care.

36.    Defendant Primecare was comfortable providing negligent care, ignoring requests for medical treatment without any prioritization or review of the particular medical complaint until convenient, and engaging in other deviations from ordinary requirements of medical care.

37.    Plaintiff made several verbal complaints to Primecare Management, informing them of what was transpiring (as aforesaid), and expressed that the above medical treatment policies and practices needed to cease and change immediately.

**[4]  The circumstances of Plaintiff's termination were objectively pretextual.**

38.    Plaintiff's approximate 1-week of employment was a period of time in which she was to overlap, get acclimated and in essence train until shortly thereafter the departing Medical Director fully separated from Defendant Primecare (as Plaintiff was his hired successor).

39.    Plaintiff is a very accomplished medical professional with a strong academic and medical background. She was carefully screened, deemed fully qualified, hired by Defendant Primecare, and underwent substantial credentialing to perform work for Defendant Primecare within MCCF.

40.    Plaintiff was not given any admonishment, warning, or known concern by any supervisor or management **prior to** her abrupt termination from employment on or about October 31, 2019.

41.     Plaintiff was upon information and belief perceived as someone who was too vocal about legally-protected matters, as she:

> (1) Complained about what she reasonably perceived to be racial discrimination;
>
> (2) Complained about what she reasonably perceived to be gender and/or sexually inappropriate discrimination; and
>
> (3) Complained about what she reasonably believed to be unlawful or unconstitutional medical care practices, *including telling Primecare Management that if a state or federal agency investigates their medical care, they would find a "ton of violations."*

42.     The temporal proximity from Plaintiff's complaints to her termination (just a matter of hours and days) creates an inference of retaliation.

43.     Plaintiff was to be paid $251,680.00 as an annual salary, in addition to various benefits / bonuses outlined in her offer of employment. Defendants exhibited such overall animosity to Plaintiff that they refused to even pay her for the slightly more than 1 week she worked for Defendants (despite numerous verbal and written requests from Plaintiff). Defendants thus knowingly violated state-law requirements in their efforts to express antagonism towards Plaintiff.

44.     Plaintiff was informed by Defendant Ehrenfeuchter in the late morning of October 31, 2019 that "based on the things you have asked us, it appears the relationship may become challenging at times and we think it'd be best to part ways." Defendant Ehrenfeuchter thus acknowledged in his communication to Plaintiff about her termination that her termination had nothing to do with anything she supposedly did wrong – but rather – *was related to communications she made* to Primecare Management.

45.     As a result of her communication from Defendant Ehrenfeuchter, Plaintiff contacted Defendant Haskins. Defendant Haskins told Plaintiff they (as in Defendants) simply

decided to "end the relationship" and her "services were no longer needed." She was offered no additional information as of October 31, 2019 (her effective termination from employment).

46.    Following Plaintiff's termination on October 31, 2019 without any specified rationale, Plaintiff e-mailed Primecare Management at 12:48 PM stating *inter alia*:

> (1) Her termination was "without cause" as defined by the terms of her employment;
>
> (2) Her termination was "retaliatory," as she was a "whistleblower;" and
>
> (3) She still intended to notify the Medical Director of Defendant Primecare of health and safety violations because of such improper medical care, which she felt obligated to do in light of such atrocities.

47.    It was evident that Defendants merely wanted a Medical Director who would play ball, have the impression inmates were nothing short of farm animals, and be comfortable with simply doing what she could with unqualified or limited staff therein.

48.    After Plaintiff reiterated her prior concerns of illegality, being a whistleblower, and having been wrongfully terminated, Defendants attempted to fabricate a pretext for Plaintiff's termination. In particular, by letter dated November 1, 2019, Defendants memorialized Plaintiff was terminated for:

- "Cause;"

- Plaintiff allegedly failing "to respond to a medical emergency;"

- Plaintiff speaking "disrespectfully to another employee;" and

- Not covering her "required shifts on two occasions."

49.    The aforesaid termination letter, dated November 1, 2019, was executed by Defendant Weber. Notably, Plaintiff was not asked a single question by anyone or Defendants about any issue they threw into termination correspondence, indicating no intent to investigate, and no real regard for what may of transpired.

50.     Plaintiff's termination for reasons memorialized in her termination letter were pretextual, as: (a) she was in fact present shadowing (*only being in orientation*) during the medical emergency, but was legally prohibited in being involved as a result of medical regulations; (b) Plaintiff had not even been informed when her malpractice insurance would be effective *despite multiple requests*, while overlapping in shadowing the outgoing Medical Director; and (c) Plaintiff had previously conferred with Jennifer Mroz about recovering from a short-term flu-like illness by taking 2 days off from work to commence on a full-time basis post-orientation. Each and every vague rationale for Plaintiff's termination was an after-the-fact, completely bogus pretext.

51.     Plaintiff, per the terms of her employment offer in writing, was also entitled to forty-five (45) days of compensation and forty-five (45) days of notice, as her employment terms stated:

> **Termination.** This Agreement may be terminated upon the occurrence of any of the following events:
>
> \* \* \*
>
> (b) Forty-five days prior written notice by Company or ninety (90) days written notice by Physician, without cause. Company may choose to compensate Physician's forty-five (45) day salary in lieu of providing prior written notice.

52.     Plaintiff was terminated unlawfully, contrary to well established public policies, and she was not paid at least forty-five (45) days compensation when she was transparently terminated without case per the terms of her employment agreement with Defendants.

53.     Defendants Haskins, Weber, and Ehrenfeuchter participated in: (a) failing to remedy Plaintiff's complaints; (b) perpetuating the illegalities set forth in this lawsuit; (c) running a business for profit and without regard to inmate safety or employee concerns; and (d) Plaintiff's retaliatory termination from Defendant Primecare.

**Count I**
**Violations of 42 U.S.C. § 1981**
**(Retaliation)**
**- Against All Defendants -**

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     Plaintiff engaged in protected activity under § 1981 by complaining of what she reasonably perceived to be racial, ethnic and/or ancestral discrimination.

56.     Plaintiff is protected under §1981 in 2 separate ways: (1) due to her accent;[2] and (2) because of her ethnicity as a whole.[3]

---

[2] Courts have overwhelmingly concluded that one's accent is a linguistic characteristic of their "ancestry", **which is expressly protected under Section 1981**. It is actually **well established** that Section 1981 prohibits racial discrimination based upon one's race/ancestry and linguistic characteristics. In *Chandoke v. Anheuser-Busch, Inc.*, 843 F. Supp. 16, 18-20 (D.N.J. 1994), the court explained that Indian ancestry is protected under Section 1981 and that accents relate to not only national origin discrimination *but also racial discrimination*. *See also Gupta v. Sears, Roebuck & Co.*, 2007 WL 2253609, at *3 (W.D. Pa. 2007)(denying motion to dismiss because the plaintiff adequately pleaded Indian ancestry, which is a race, and a discernable accent as to claims under Section 1981); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(Affirming a trial verdict in favor of a plaintiff asserting for, among other claims, a claim under 42 U.S.C § 1981 for discrimination because of his accent; *Lopez v. Indiana-Kentucky Elec. Corp.*, 2006 WL 3247892 (S.D. Ind. 2006)(denying summary judgment on plaintiff's Section 1981 claim due to hostility towards his Spanish accent); *Minetos v. City University of New York*, 875 F.Supp. 1046 (S.D. N.Y. 1995)(Hispanic secretary with college's music department stated a Section 1981 cause of action by alleging that she was not allowed to be head secretary because she had a Hispanic accent; *Ortiz v. Bank of America*, 547 F.Supp. 550 (D.Cal. 1982)(Puerto Rican asserting employment discrimination because of accent states cause of action under Section 1981); *Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed.Appx. 656 (8th Cir. 2009)(finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(affirming verdict for Nigerian born professor under Section 1981 for among other things, discrimination against his accent); *Mavrommatis v. Carey Limousine Westchester, Inc.*, WL 2976925 (D.Conn. 2010)(holding 1981 claim satisfied by discrimination because of accent but dismissing case on other grounds); *Rumala v. New York City Transit Auth* ., 2005 WL 2076596, *8-*9 (E.D.N.Y. 2005)(construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discriminated based on an alleged accent); *Franchitti v. Bloomberg, L.P.*, 2004 WL 2366183, ** 2-4 (S.D.N.Y. 2004) (inferring that § 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

[3] *See e.g. Alizadeh v. Safeway Stores*, 802 F.2d 111 ** 8-10 (5th Cir. 1986)(reversing district court and explaining those from Iraq and Iran are considered *specific races*, ethnic groups, or ancestries entitled to protection under §1981, as they are not just potential national origins); *Amini v. Oberlin College*, 259 F.3d 493, 503 (6th Cir. 2001)(reversing district court and explaining the Supreme Court has already established that those from the "Middle East" comprise a race, not just a place of orgin); *Abdullahi v. Prada USA Corp.*, 520 F.3d 710, 712 (7th Cir. 2008)(reversing district court and explaining that pursuant to Supreme Court president "Iranians" are properly considered a race); *Al-Khazraji v. St. Francis College*, 784 F.2d 505, 514 (3rd Cir. 1986)(reversing district court explaining Arabs are protected under § 1981).

57.    Plaintiff complained of discrimination by referencing what had transpired to Primecare Management, and her termination for such protected activity constitutes statutorily prohibited termination.[4]

**Count II**
**Violations of 42 U.S.C. § 1983**
**(Retaliation)**
**- Against All Defendants -**

58.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.    Plaintiff complained about 3 categories of established concerns *deemed legally to be matters of public interest* to the highest levels of Defendants' management: (1) racial discrimination concerns;[5] (2) sexual / gender discrimination concerns;[6] and (3) correctional facility safety and health violations.[7]

---

[4] Defendants are private employers and a private, for-profit corporation. This claim is pursued against all Defendants and should be permitted under §1981 exclusively. However, to the extent any court believes it to be necessary, Plaintiff alternatively pursues such a claim by and through the vehicle of 42 U.S.C. § 1983.

[5] Complaints about serious health hazards, violations of laws and – in particular – concerns of "racial discrimination plainly fall within the ambit of speech about matters of public concern," as "the Supreme Court clearly established that racial discrimination is inherently a matter of public concern." *Larry v. Powerski*, 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015), citing, *Connick v. Myers*, 461 U.S. 138 (1983). *See also e.g. Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1988)(reversing district court and holding complaints by employee about racial concerns or racial employment practices were entitled to First Amendment protection); *Walker v. City of New York*, 2002 WL 31051534, at *6 (E.D.N.Y. 2002)(holding that claims of disparate treatment complaints based on race constitute protected activity as to a First Amendment Retaliation claim); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 679 (6th Cir. 2001)(Professor's use of word "nigger" in classroom based upon context was entitled to First Amendment protection despite a student complaint).

[6] *See e.g. Azzaro v. County of Allegheny*, 110 F.3d 968 (3rd Cir. 1996)(reversing district court and explaining even a single, isolated incident of sexual harassment can constitute a matter of public concern prohibiting First Amendment retaliation).

[7] *See e.g. Schopmeyer v. Plainfield Juvenile Corr. Facility*, 2002 U.S. Dist. LEXIS 19209 * 23 (S.D. Ind. 2002)(finding that complaints about inmate treatment in a facility constitutes protected First Amendment speech); *Dillon v. Suffolk County Dep't of Health Servs.*, 917 F. Supp. 2d 196, 208 (E.D. N.Y. 2013)("the inadequacy of training

60.    Each of the types of discrimination referenced above appeared to be a pervasive and tolerated practice within Defendant Primecare and its facility it was placed with, such that Plaintiff had significant concerns not just as to her – but to the staff and public as a whole.

61.    Defendants, acting under color of state law(s), have and continue to perform a municipal and state-wide function of caring for inmates of prisons. Defendants actions of: (1) not training, no retaining, or having proper medical personnel; (2) providing inadequate and constitutionally deficient medical care; and (3) creating an environment prone to continual constitutional violations - - all constitute violations of civil and constitutional protections.

62.    Plaintiff's termination for engaging in complaints about the above types of public concerns in her capacity as a private citizen who was *very upset* by what she witnessed constitutes First Amendment Retaliation.

### Count III
### Violations of 42 U.S.C. § 1983
### (Retaliation)
### - Against All Defendants -

62.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.    The Pennsylvania Whistleblower Law provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee or a person acting on behalf of the employee makes a good faith report or is about to report . . . an instance of *wrongdoing or waste by a public body* or an instance of waste by any other employer as defined in this act.

> 43 Pa. Stat. Ann. § 1423

---

and care within the facility, and the lack of a response to reported conditions implicate the health, welfare and safety of . . . individuals *in the care of the state*, are matters of importance to the public" and matters of public concern).

64.    Defendants constitute a public body as that term is used in § 1423 based upon their municipal role, based upon their receipt and use of state resources, state funding, and otherwise meet the public-body or proper employer definition (to be liable under this law).

65.    Plaintiff reported <u>both</u> waste and wrongdoing, which she reasonably believed were violations of local, state and/or federal law(s).

66.    Plaintiff's termination for being a whistleblower constitute unlawful termination.

**Count IV**
**<u>Common Law Wrongful Termination</u>**
**(Retaliation)**
**- Against All Defendants -**

67.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.    Plaintiff refused to participate in actions which she believed to be unlawful, criminal, statutorily and/or constitutionally prohibited, and Plaintiff was terminated both in violation of this Commonwealth's public policies.

69.    Plaintiff's termination thus constitutes a violation in this Commonwealth of the well-established doctrine of common-law wrongful termination.

**Count V**
**<u>Breach of Contract</u>**
**- Against All Defendants -**

70.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71.    Plaintiff was promised: (a) a sign-on bonus; (b) 45-days' notice or pay in lieu of notice if terminated without cause; and (c) a set salary.

72.    Plaintiff relied to her detriment on these promises and assurances by transitioning to Defendants for her job position.

73.     Defendants failed to pay Plaintiff these promised benefits despite that Plaintiff was terminated without cause (irrespective of Defendants' after-the-fact feigned rationale).

**Count VI**
**Violations of the Pennsylvania Wage Payment & Collection Law ("PWPCL")**
**- Against All Defendants -**

74.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75.     All of the compensation set forth in Count V of this Complaint constitutes wages and/or benefits payable to Plaintiff.

76.     Defendants failed to pay Plaintiff such wages and/or benefits within her next natural pay period(s) following her separation from employment.

77.     Plaintiff is not only entitled to statutorily mandated compensation under the PWPCL, but she is also entitled to all other penalties or damages permitted (including but not limited to liquidated damages).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, notice-pay, benefits, training, promotions, reinstatement, and seniority.

B.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable laws herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

17

C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E.    Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:  _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: November 20, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Sheler Sadati

v.

Primecare Medical, Inc., et al.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| 11/20/2019 | _(signature)_ | Plaintiff |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:    5410 Woodview Way, Malvern, PA 19355

Address of Defendant:    3940 Locust Lane, Harrisburg, PA 17109

Place of Accident, Incident or Transaction:    Defendants place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐    No ☒
    previously terminated action in this court?

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☐    No ☒
    pending or within one year previously  terminated action in this court?

3.  Does this case involve the validity or infringement of a patent   already in suit or any earlier    Yes ☐    No ☒
    numbered case pending or within one year previously  terminated action of this court?

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights    Yes ☐    No ☒
    case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☒ is not  related to any case now pending or within one year previously terminated action in
this court except as noted above.

DATE:    11/20/2019 _____    ARK2484 / 91538
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

*A.*    *Federal Question Cases:*    *B.*    *Diversity Jurisdiction Cases:*

☐    1.    Indemnity Contract, Marine Contract, and All Other Contracts    ☐    1.    Insurance Contract and Other Contracts
☐    2.    FELA    ☐    2.    Airplane Personal Injury
☐    3.    Jones Act-Personal Injury    ☐    3.    Assault, Defamation
☐    4.    Antitrust    ☐    4.    Marine Personal Injury
☐    5.    Patent    ☐    5.    Motor Vehicle Personal Injury
☐    6.    Labor-Management Relations    ☐    6.    Other Personal Injury *(Please specify):* _____
☒    7.    Civil Rights    ☐    7.    Products Liability
☐    8.    Habeas Corpus    ☐    8.    Products Liability – Asbestos
☐    9.    Securities Act(s) Cases    ☐    9.    All other Diversity Cases
☐    10.    Social Security Review Cases    *(Please specify):* _____
☐    11.    All other Federal Question Cases
        *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,    Ari R. Karpf _____ , counsel of record *or pro se plaintiff*, do hereby certify:

☒    Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
        exceed the sum of $150,000.00 exclusive of interest and costs:

☐    Relief other than monetary damages is sought.

DATE:    11/20/2019 _____    ARK2484 / 91538
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SADATI, SHELER

**(b)** County of Residence of First Listed Plaintiff __Chester__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
PRIMECARE MEDICAL, INC., ET AL.

County of Residence of First Listed Defendant __Dauphin__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1 U.S. Government Plaintiff
X 3 Federal Question *(U.S. Government Not a Party)*
2 U.S. Government Defendant
4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

(X marked: 445 Amer. w/Disabilities - Employment)

## V. ORIGIN *(Place an "X" in One Box Only)*
X 1 Original Proceeding
2 Removed from State Court
3 Remanded from Appellate Court
4 Reinstated or Reopened
5 Transferred from Another District *(specify)*
6 Multidistrict Litigation - Transfer
8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981); 42USC1983
Brief description of cause:
Violations of the Section 1981, 42USC1983 and applicable state law(s).

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes  No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE _____  DOCKET NUMBER _____

DATE 11/20/2019
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

Print | Save As... | Reset