IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELER SADATI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-5452 |
| PRIMECARE MEDICAL, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Tucker, J.                                                                                                      August 17th, 2020

Before the Court is Defendants' Motions to Dismiss (ECF Nos. 6–7, 10–11) and Plaintiff's Responses (ECF Nos. 9, 14). For the reasons discussed below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

I.   **FACTUAL BACKGROUND**

On October 23, 2019, Plaintiff began working as an employee of Defendant PrimeCare Medical, Inc., serving as Medical Director at Montgomery County Correctional Facility. Am. Comp ¶ 18. Defendant PrimeCare provides subcontracted healthcare services to correctional facilities. Am. Compl. ¶ 8. Plaintiff was employed by Defendant PrimeCare for about nine days until she was terminated on October 31, 2019. Am. Compl. ¶ 19.

Plaintiff alleges that her termination was retaliation for reporting concerns of racial and ethnic discrimination, unwelcome sexually-offensive conduct, and objecting to unconstitutional and unlawful policies and practices. Am. Compl. ¶¶ 21–38. During her employment, Plaintiff verbally reported what she believed to be discrimination based on her race, ethnicity, and/or ancestry.  Am. Compl. ¶ 22–27. Plaintiff claims that a Health Services Administrator at the

1

facility questioned how her accent would be perceived by staff and prisoners, as well as whether she "had to translate English in her head before speaking it because that's how it appeared." Am. Compl. ¶ 22–27. On October 29, 2019, an administrative employee made several unwelcome sexual and gender-related comments to Plaintiff, including referring to his penis size and suggesting that "women have a bad sense of judgment with distance." Am. Comp. ¶¶ 28–31. Plaintiff reported to the incident to the individual Defendants. Am. Comp. ¶¶ 28–31.

During her employment with PrimeCare, Plaintiff allegedly witnessed a number of unlawful or unconstitutional practices with respect to inmate care, including: (1) medical staff joking about or ignoring patient medical issues, leading to a backlog of up to several months in reviewing inmates' serious health concerns; (2) medical staff treating multiple prisoners in the same rooms and openly discussing their health histories and concerns in violation of HIPPA; (3) medical staff not making efforts to comply with required infection controls; (4) one physician's assistant neglecting a prisoner's eye inflection where it was known the patient could lose his eye(s) because she "does not like him much;" (5) medical staff providing clinical care without proper consultation or supervision by a medical doctor; and (6) medical staff wasting medication, causing unnecessary trips to medical facilities, and wasting state funds. Am. Compl. ¶¶ 34–35. Plaintiff allegedly made several verbal complaints to the individual Defendants, "informing them of what was transpiring" and expressing that "medical treatment policies and practices needed to cease and change immediately." Am. Compl. ¶ 38.

Plaintiff told PrimeCare management that she thought that her termination was "without cause" and "retaliatory" because she was a whistleblower. Am. Compl. ¶ 47. However, Defendants contended that she was fired for cause because she allegedly failed "to respond to a medical emergency," spoke "disrespectfully to another employee," and did not cover her

"required shifts on two occasions." Am. Compl. ¶ 49. Plaintiff was supposed to be paid an annual salary of $251,680.00, as well as various benefits and bonuses, which were outlined in her employment offer. Am. Compl. ¶ 44. Defendants refused to pay Plaintiff for the days she was employed, despite several verbal and written requests from Plaintiff. *Id.*

As a result of her termination, Plaintiff filed this suit against Defendants PrimeCare, PrimeCare's COO Todd Haskins, PrimeCare's CEO Thomas Weber, and aDirector at PrimeCare, Kurt Ehrenfeucther. Am. Compl. Plaintiff asserts three federal causes of action: (1) § 1981 retaliation claim against all Defendants; (2) § 1983 retaliation claim against all Defendants; and (3) retaliation claim for violations of Title VII of the Civil Rights Act of 1964 against Defendant PrimeCare. Am. Compl. ¶¶ 55–63, 80–81. In addition, Plaintiff alleges four state and common law claims: (4) Pennsylvania Whistleblower Law retaliation claim against all Defendants; (5) common law wrongful termination claim against all Defendants; (6) breach of contract claim against all Defendants; and (7) Pennsylvania Wage Payment and Collection Law claim against all Defendants. Am. Compl. ¶¶ 64–79.

Upon consideration of the Parties' briefing, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's § 1981 claim against all Defendants, wrongful termination claim against individual Defendants, and breach of contract claim against individual Defendants, and **DENIES** Defendants' Motions to Dismiss Plaintiff's § 1983 claim against all Defendants, Pennsylvania Whistleblower Law claim against all Defendants, and wrongful termination claim against Defendant PrimeCare.

II.   **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a claim where the complaint fails to provide facts sufficient to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a plausible claim for relief has been raised is a "context-specific task" which requires the "court to draw on its judicial experience and common sense." *Id.* at 679.

A district court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft*, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (2009). To survive a motion to dismiss, a plaintiff must provide more than "a formulaic recitation of the elements[.]" *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations omitted).

### III. ANALYSIS

#### A. Plaintiff Failed to Adequately Plead that Defendants Acted as a Private Actor For Purposes of 42 U.S.C. § 1981.

The Court finds that Plaintiff has failed to plead facts suggesting that Defendants acted as private actors when allegedly firing Plaintiff in retaliation for her reports of discrimination. As a result, Defendants' Motion to Dismiss is **GRANTED** for Count I of Plaintiff's Amended Complaint against all Defendants.

In Count I of the Amended Complaint, Plaintiff claims that she "engaged in protected activity under § 1981 by complaining of what she reasonably perceived to be racial, ethnic, and/or ancestral discrimination[,]" due to her accent and her ethnicity. Am. Compl. ¶¶ 56–57. Plaintiff claims that her complaint of discrimination to PrimeCare's management and her following termination constitutes "statutorily protected termination." Am. Comp. ¶ 58.

To establish a prima facie retaliation claim under § 1981, a plaintiff "must show: (1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). The Supreme Court has held that claims against a state actor should be brought under § 1983 rather than § 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989).

The Defendants allege that Plaintiff failed to identify any adverse action that they took against her and consequently failed to establish that adverse action by Defendants was causally related to her alleged engagement in a protected activity. Defs.' Mem. of Supp. 4, ECF No. 11. Defendants also claim that Plaintiff specifically failed to plead facts demonstrating that any of the individual Defendants were involved in making the decision to terminate her employment and/or that the actions were motivated by racial discrimination. Defs.' Mem. of Supp. 4–5. Defendants claim that all Defendants are state actors, and therefore, § 1981 claims must be brought under § 1983, because § 1981 claims apply only to private entities. Defs.' Mem. of Supp. 5. Defendants specifically point to Plaintiff's Amended Complaint at Paragraph 17, Footnote 1, where Plaintiff notes that Defendant PrimeCare has been repeatedly considered a "state actor" by courts in the United States. Am. Comp. ¶ 17, *See e.g. Kinder v. PrimeCare Med., Inc.*, 2014 U.S. Dist. LEXIS 182965 (S.D. W.Va. Dec. 11, 2014) (because of its role performing correctional facility medical care, PrimeCare acts under color of state law subject to § 1983 liability; traditionally and exclusively public function renders otherwise private actors "persons acting under the color of state law"); *Ponzini v. Monroe Cty.*, 2015 U.S. Dist. LEXIS 115669 (M.D. Pa. Aug. 31, 2015) (performing a correctional facility role, "which is traditionally and exclusively [a] public function renders otherwise private actors "persons acting under the color

of state law" making PrimeCare liable under §1983.); *Farrington v. Cty. of Bucks,* 2018 U.S. Dist. LEXIS 82891 (E.D. Pa. May 16, 2018) (PrimeCare did not dispute qualifying as a state actor for purposes of §1983 application). The Supreme Court has generally held that contracted physicians working in prisons are state actors for purposes of that employment. *See West v. Atkins*, 487 U.S. 42 (1988). "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id.* at 55–56.

Plaintiff argues that "[i]t is still a bit unclear [at this early stage of the case] whether Defendant Primecare is a private, for-profit corporation, or a state actor based on its performance of municipality functions." Pl.'s Resp. 8, ECF No. 14. Plaintiff argues that this determination should not be made until discovery is completed and the issue is fully explored. Pl.'s Resp. 9. Although Plaintiff does not wish to waive the right to explore this issue in discovery, Plaintiff notes that she is willing to have the Court analyze these claims under § 1983. Pl.'s Resp. 8–9.

Although Plaintiff alleges a specific account of discrimination, reporting discrimination, and subsequent firing to raise a plausible inference of a prima facie retaliation claim, Plaintiff pleads these complaints against an alleged state actor. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Count I and Plaintiff's allegations will instead be considered solely under 42 U.S.C. § 1983.

### B. Plaintiff Adequately Pleaded a "Causal Connection" Between Plaintiff's Protected Action and Her Allegedly Retaliatory Termination.

The Court **DENIES** Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint because Plaintiff alleges sufficient facts to make out a claim for retaliatory termination under 42 U.S.C. § 1983.

In Count II of her Amended Complaint, Plaintiff claims that she complained about three types of "concerns *deemed legally to be matters of public interest*" including: "(1) racial discrimination concerns; (2) sexual / gender discrimination concerns; and (3) correctional facility safety and health violations." Am. Compl. ¶ 60. Plaintiff further claims that Defendants, under the color of state law(s) violated civil and constitutional protections by: (1) not training, not retaining, or having proper medical personnel; (2) providing inadequate and constitutionally deficient medical care; and (3) creating an environment prone to continual constitutional violations. Am. Compl. ¶ 63.

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Therefore, to establish a claim under § 1983, Plaintiff must plead facts which raise a plausible inference that Defendants, acting under color of state law, deprived Plaintiff of a right secured by the Constitution or the laws of the United States. *See West v. Atkins*, 487 U.S. 42, 49 (1988).

To state a retaliation claim under § 1983, a plaintiff must allege "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). To establish the required causal connection, Plaintiff must "prove either (1) an unusually suggestive temporal proximity between the

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*

Defendants claim that Plaintiff failed to identify the necessary personal involvement of any of the individual Defendants in the decision to terminate Plaintiff's employment or that any of them consented to that decision. Defs.' Mem. of Supp. 7. Defendants assert that Plaintiff alleged, at most, that the individual Defendants were a source of information, which does not amount to personal involvement or agreement in the decision. *Id.* Defendants also claim that Plaintiff failed to aver any facts to show that Defendant PrimeCare had policies or customs in place that led to the violation, as required to state a *Monell* claim. *Id.* Instead, Defendants claim that Plaintiff unsuccessfully attempted to establish a claim under a theory of *respondeat superior*. Defs.' Mem. of Supp. 8.

To satisfy the pleading standard for a *Monell* claim, a plaintiff must: (1) identify a policy or custom that deprived him of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 692–94 (1978); *see also Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 436 (E.D. Pa. 2015). A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (quoting *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). This Court has previously held that a prison healthcare provider like Defendant PrimeCare can

be liable under § 1983 if the plaintiff "can provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation he alleges." *Lee v. Abellos*, Civil Action No. 13-0486, 2014 WL 7271363, at *9 (E.D. Pa. Dec. 19, 2014) (citing *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

Plaintiff contends that she has pleaded sufficient facts to show that she participated in constitutionally protected conduct as required by the first element of a § 1983 claim. She points to her complaining to the individual Defendants about racial/ethnic discrimination to which she was subjected, sexual general discrimination concerns, and safety and health violations at the facility. Pl.'s Resp. 13–14. Plaintiff also asserts that she has pleaded facts to support the second element because she was terminated and received a termination letter from the Defendants, which she claims would sufficiently deter a person from exercising their constitutional rights. Pl.'s Resp. 14. Plaintiff claims that the timing of a few days between her complaints and her termination is sufficient to raise an inference of a causal link, satisfying the third element of a retaliation claim under § 1983.  Pl.'s Resp. 14. Plaintiff additionally argues that she has pleaded a number of practices and customs performed under the color of state law(s), including improperly trained medical personnel, inadequate and constitutionally deficient medical care, and an environment prone to continual constitutional violations. Pl.'s Resp. 14. Plaintiff alleges that Defendants were "state actors" in her Amended Complaint, making § 1983 the appropriate avenue for this complaint. Am. Compl. ¶ 17. At this stage, Plaintiff has pleaded sufficient facts to allege the elements of a § 1983 claim. Therefore, the Court **DENIES** Defendants' Motion to Dismiss Count II.

### C. Plaintiff Adequately Pleaded "Wrongdoing" and "Waste" by Defendants in Violation of Pennsylvania Whistleblower Law.

The Court **DENIES** Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint because Plaintiff adequately alleges, as required by the Pennsylvania Whistleblower Law, that Defendants' poor medical care of prisoners created both "wrongdoing" and "waste."

In Count III of the Amended Complaint, Plaintiff claims that Defendants constitute a "public body" based on their municipal role, receipt and use of state resources and funding, and otherwise meeting "the public-body or proper employer definition" to be liable under the Pennsylvania Whistleblower Law. Am. Compl. ¶ 66. Pennsylvania Whistleblower Law, 43 P.S. § 1423(a), provides that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report . . . to the employer or appropriate authority an instance of waste or wrongdoing.

Defendants claim that Plaintiff failed to identify any "wrongdoing" by the Defendants, such as any violation of a federal or state statute, regulation, ordinance, or code, that harmed the public or the employer. Defs.' Mem. of Supp. 11. Defendants also claim that Plaintiff has failed to allege any facts to demonstrate that such an actual "wrongdoing" existed. Defs.' Mem. of Supp. 11. Defendants further allege that Plaintiff failed to identify any alleged abuse, misuse, destruction, or loss of funds by Defendants, which would constitute "waste" as required and defined by Pennsylvania Whistleblower Law. Defs.' Mem. of Supp. 12.

Plaintiff, however, alleged numerous plausible facts which allow her whistleblower claim to survive the Motion to Dismiss, including wrongdoing and waste. Pl.'s Resp. 20. Plaintiff contends that her Amended Complaint laid out specific details surrounding the

unlawful/constitutional practices and policies for healthcare at the facility, including witnessing "a pattern, practice, and level of medical care in MCCF that shocked her, scared her to her very core, and was such a deviation from any reasonable level of medical care, it led her to raise significant internal concerns . . . ", as well as violations of laws, policies, and ethical codes of conduct such as HIPPA, policies/practices related to preventing infectious disease, and proper training." Pl.'s Resp. 21–22. Plaintiff specifically noted that Defendants' staff wasted medication, caused unnecessary trips to hospitals and other medical facilities, and wasted state money in substantial ways. Pl.'s Resp. 22.

At this stage, Plaintiff has pleaded sufficient facts to allege both waste and wrongdoing on behalf of Defendants. Therefore, the Court **DENIES** Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint.

> **D. Plaintiff's Wrongful Termination Claim is Not Barred by Other Available Remedies at this Stage, but Plaintiff Failed to Adequately Plead Individual Defendants Acted Outside Their Official Capacities.**

The Court **DENIES** Defendants' Motion to Dismiss Count IV of Plaintiff's Amended Complaint against Defendant PrimeCare because Plaintiff pleaded sufficient facts to support a wrongful termination claim at this stage of litigation. However, the Court **GRANTS** Defendants' Motion to Dismiss Count IV against the individual Defendants because Plaintiff failed to allege facts suggesting that those Defendants acted in an individual, rather than a corporate capacity.

In the Amended Complaint, Plaintiff claims that she "refused to participate in actions which she believed to be unlawful, criminal, statutorily and/or constitutionally prohibited" and was terminated in violation of the doctrine of common law wrongful termination. Am. Compl. ¶¶ 70–71.

In Pennsylvania, a plaintiff may bring a common law wrongful discharge claim where the termination of an "at-will employee would threaten clear mandates of public policy." *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989). These exceptions include that "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003) (quoting *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. 1998)). In *Shick v. Shirey*, the Pennsylvania Supreme Court went on to say that "public policy" is not limited to "that which has been legislatively enacted[,]" but may also include non-legislatively expressed public policy to which there is virtually "universal public sentiment." 716 A.2d 1231, 1235 (1998) (quoting *Mamlin v. Genoe*, 17 A.2d 407, 409 (Pa. 1941)).

It is less clear whether such a claim can be made against defendants in their individual capacity. *Compare McGuire v. Palmerton Hosp.,* No. 12–cv–1762, 2012 WL 5494924, at *5 (M.D. Pa. Nov.13, 2012) (finding a wrongful termination claim does not exist against defendant in individual capacity), *and Hrosik v. Latrobe Steel Co.,* No. 94–1361, 1995 WL 456212, at *6 (W.D. Pa. Apr.25, 1995) (finding a wrongful discharge claim exists only against an employee's employer), *with Brennan v. Cephalon, Inc.,* No. 04–3241, 2005 WL 2807195, at *13, (D.N.J. Oct. 25, 2005) (finding a wrongful termination claim against individuals is possible if actions were taken in an individual capacity as opposed to corporate capacity), *and DeMuro v. Phila. Housing Auth.,* No. 98–3137, 1998 WL 962103, at *5 (E.D. Pa. Dec.22, 1998) (finding a wrongful termination claim against an individual could proceed, but dismissing on other grounds). However, even if a wrongful discharge claim could be brought against individual defendants, case law suggests that such a cause of action would require plaintiff "to allege that

the individuals acted in an individual or personal capacity as opposed to a corporate capacity." *Medley v. SugarHouse HSP Gaming, L.P.,* No. 12-CV-6284, 2013 WL 1157349, at *4 (E.D. Pa. Mar. 21, 2013).

Defendants claim that Plaintiff's wrongful termination claim is barred when a remedy is available through other mechanisms, such as the Pennsylvania Whistleblower Law claim which Plaintiff asserts in Count III of her Amended Complaint. Defs.' Mem. of Supp. 8. Defendants assert that Plaintiff also fails to state a common law wrongful termination claim because Plaintiff has not identified any public policy or Pennsylvania law implicated by her termination. Defs.' Mem. of Supp. 8. Defendants additionally argue that Plaintiff's claim fails with respect to the individual Defendants specifically because wrongful termination claims can only be asserted against the employer of the Plaintiff. Defs.' Mem. of Supp. 9. Defendants do not reference any binding law specific to common law wrongful termination to support this claim.

Plaintiff specifically alleges that she witnessed the violation of Pennsylvania medical laws, as well as state ethics and practice guidelines. Pl.'s Resp. 16. Plaintiff contends that she refused to violate these laws and refused to participate in actions which she believed were criminal, which she claims led to her termination. Pl.'s Resp. 16–17. Plaintiff argues that her common law wrongful termination claim should not be dismissed because it is too early for the Court to determine, as a matter of law, that the claim is clearly preempted by an alternative statutory remedy. Pl.'s Resp. 17. In regard to the role of the individual Defendants, Plaintiff alleges that the individual Defendants were the direct recipients of her workplace complaints and "the ones who decided to end the employment relationship[,]" but does not allege that any actions taken by the individual Defendants outside of the workplace or their job roles. Pl.'s Resp. 18.

At this stage, Plaintiff has pleaded sufficient facts to allege the elements of wrongful termination against her employer, but fails to adequately allege claims against the individual Defendants in an individual rather than corporate capacity. Therefore, the Court **DENIES** Defendants' Motion to Dismiss Count IV against Defendant PrimeCare and **GRANTS** Defendants' Motion to Dismiss Count IV with respect to the individual Defendants.

### E. Plaintiff Failed to Allege Facts to Show a Contract Existed Between Plaintiff and the Individual Defendants.

The Court also **GRANTS** Defendants' Motion to Dismiss Count V of Plaintiff's Amended Complaint because Plaintiff does not allege facts to show a breach of contract between Plaintiff and the individual Defendants.

In Count V of the Amended Complaint, Plaintiff claims that she "was promised: (a) a sign-on bonus; (b) 45-days' notice or pay in lieu of notice if terminated without cause; and (c) a set salary." Am. Compl. ¶ 73. Plaintiff claims that she relied on these promises to her determinant and that Defendants failed to pay Plaintiff these promised benefits. Am. Compl. ¶¶ 74–75.

Three elements are necessary to allege a breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Dufner v. Am. Coll. of Physicians*, 73 Pa. D. & C.4th 382, 384–85 (Com. Pl. 2005), rev'd, 903 A.2d 56 (Pa. Super. Ct. 2006) (quoting *Williams v. Nationwide Mutual Insurance Co.*, 750 A.2d 881, 884 (Pa. Super. 2000)). "In Pennsylvania, employment is presumed to be at-will, unless there is an agreement otherwise." *Wakeley v. M.J. Brunner, Inc.*, 147 A.3d 1, 5 (2016).

Defendants claim that Plaintiff failed to allege any facts which demonstrate that the individual Defendants were parties to a written agreement and, therefore, they cannot be held

14

liable for breach of contract. Defs.' Mem. of Supp. 10. Defendants claim that Plaintiff also failed to aver any type of verbal contracts that would personally obligate them to the Plaintiff. Defs.' Mem. of Supp. 10.

Plaintiff alleges that all Defendants made promises to her upon which she relied to her detriment and that Defendants broke those promises. Pl.'s Resp. 19–20. Plaintiff argues that all individual Defendants had the power to make employment decisions, and, specifically, that Defendant Ehrenfeuchter signed her employment agreement for her position at PrimeCare. Pl.'s Resp. 19.

Defendant Ehrenfeuchter is a director at PrimeCare and oversees human resources and recruitment. Am. Compl. ¶ 11. The Court can infer that Defendant Ehrenfeuchter— in his human resources role—signed the employment agreement on behalf of Defendant PrimeCare, not in his individual capacity. Plaintiff has not plead sufficient facts to allege the existence of a valid contract between Plaintiff and the individual Defendants. Therefore, Defendants' Motion to Dismiss Count V against individual Defendants should be **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED** as to Plaintiff's § 1981 claim against all Defendants, wrongful termination claim against individual Defendants, and breach of contract claim against individual Defendants.

Defendants' Motions to Dismiss are **DENIED** as to Plaintiff's § 1983 claim against all Defendants, Pennsylvania Whistleblower Law claim against all Defendants, and wrongful termination claim against Defendant PrimeCare. An appropriate Order follows.